**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) | Case No. 17-cv-8603 |
| *Plaintiffs,* | ) ) | Judge: |
| v. | ) ) | Magistrate Judge: |
| SABRELINER AVIATION, LLC, a Delaware limited liability company, | ) ) ) ) | |
| *Defendant.* | ) | |

**<u>COMPLAINT</u>**

Plaintiffs, Central States, Southeast and Southwest Areas Health and Welfare Fund and Arthur H. Bunte, Jr., one of its present trustees, for a cause of action against the Defendant, allege as follows:

**<u>JURISDICTION AND VENUE</u>**

1.      This is an action for collection of delinquent contributions, interest, and liquidated damages owed to the Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") by Defendant, Sabreliner Aviation, LLC, as the successor to Sabreliner Corporation.

2.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and also under federal common law.

3.      This Court has jurisdiction over this action under section 502(e) of ERISA, 29 U.S.C. § 1132(e), under section 301(a) of LMRA, 29 U.S.C. § 185(a), and also under 28 U.S.C. § 1331.

4.      Venue lies in this Court under sections 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Fund is administered at its principal place of business in Rosemont, Illinois. Venue is also proper under 28 U.S.C. § 1391.

## PARTIES

5.      The Fund is a multiemployer health and welfare plan within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37).

6.      The Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Fund and paying the administrative expenses of the Fund.

7.      Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Fund within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund at 9377 West Higgins Road, Rosemont, Illinois.

8.      Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Arthur H. Bunte, Jr. is authorized to bring this action on behalf of the Fund, its participants and beneficiaries for the purpose of collecting unpaid contributions.

9.      Defendant, Sabreliner Aviation, LLC ("SALLC"), is a limited liability company organized under the laws of the State of Delaware.

10.     Sabreliner Corporation ("Sabreliner") was at all relevant times a corporation organized under the laws of the state of Missouri.

## BACKGROUND

11.     This matter arises from delinquent contributions in the principal amount of $255,278.30 for the period of December 1, 2013 through February 1, 2014, owed to the Fund by Sabreliner pursuant to the provisions of a collective bargaining agreement ("CBA") to which Sabreliner and Local Union No. 600 affiliated with the IBT ("Local 600") were parties, a participation agreement, and the Fund's Trust Agreement.

12.     On April 2, 2014, in the action styled *Central States, Southeast and Southwest Areas Health and Welfare Fund, et al. v. Sabreliner Corporation, et al.*, No. 14-cv-1232 (J. Pallmeyer) (the "Sabreliner Lawsuit"), the United States District Court for the Northern District of Illinois entered a judgment in favor of the Fund and against Sabreliner in the amount of $311,557.17 (the "Sabreliner Judgment"). The amount of the Sabreliner Judgment consisted of $255,278.30 for the delinquent contributions, $4,176.71 in interest through March 28, 2014, $51,055.66 in liquidated damages, $800.50 in attorneys' fees, $246.00 in costs, and post-judgment interest on the entire judgment balance at the greater of: (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged; or (ii) seven and one half percent (7.5%), with such interest to be compounded annually. (Dkt. No. 16, Sabreliner Lawsuit, Case No. 14-cv-1232.)

13.     To date, neither Sabreliner nor SALLC have made any payments towards the Sabreliner Judgment. The Fund did recover $18,000.00 subsequent to the entry of the Sabreliner Judgment pursuant to a settlement agreement with an individually named defendant in the Sabreliner Lawsuit.

## CLAIM FOR RELIEF

14.     SALLC was formed on or about January 21, 2014.

15.     On January 30, 2014, SALLC purchased substantially all of Sabreliner's assets (the "Asset Sale").

16.     The Asset Sale included, but was not limited to, Sabreliner's inventory, fixed assets, accounts receivable, intellectual property, rights to claims of any nature, and any and all other assets, whether owned or leased, real or personal, or tangible or intangible, other than those specifically excluded. (See Schedule 2.1 of the Sale Agreement Pursuant to Article 9 of the Uniform Commercial Code (the "Sale Agreement"), a true and accurate copy of which is attached hereto as Exhibit "A".)

17.     At or around the time of the Asset Sale, Sabreliner ceased all operations and its entire workforce was terminated.

18.     SALLC subsequently hired a majority of Sabreliner's former workforce. (See p.1 of the November 10, 2014 letter from SALLC to the NLRB (the "NLRB Letter"), a true and accurate copy of which is attached hereto as Exhibit "B".)

19.     Some employees formerly employed by Sabreliner began work for SALLC as early as February 3, 2014. (See *Id.*)

20.     SALLC, like Sabreliner before it, operates under the "Sabreliner" name; SALLC operates as "Sabreliner Aviation," while Sabreliner operated as "Sabreliner Corporation."

21.    Upon information and belief, SALLC operates from the same facility(ies) from which Sabreliner operated.

22.    Upon information and belief, SALLC conducts the same services conducted by Sabreliner, specifically the modification, inspection, repair, and overhaul of airframes, engines, and other components for a wide variety of aircraft, serving customers in the government, military, and private sector.

23.    Upon information and belief, after the Asset Sale, SALLC continued work being done pursuant to multiple contracts won by Sabreliner during its operation, including with respect to at least 12 military and corporate aircraft on which work was already being done by Sabreliner prior to the Asset Sale.

24.    SALLC itself represented to the NLRB that it had "become a successor employer" to Sabreliner following the Asset Sale. (See *Id.*)

25.    SALLC publicly represented that it aimed to "leverag[e] the excellent Sabreliner brand and reputation, and [its] highly skilled and motivated workforce."

26.    Upon information and belief, in the course of continuing its operations, SALLC utilized, and still utilizes, intellectual property formerly owned by Sabreliner, including but not limited to trade names, patents, trademarks, trade secrets, and all goodwill associated therewith.

27.    SALLC had knowledge of Sabreliner's obligations to the Fund when it entered into the Sale Agreement. Indeed, in the Sale Agreement, SALLC attempted to disclaim the transfer to SALLC of "any rights or obligations of [Sabreliner] under any . . . collective bargaining agreements . . . with respect to any employee benefits obligations." (See Schedule 2.2, Sale Agreement, Ex. A.)

28.     Prior to the Asset Sale, SALLC was aware that Sabreliner was unionized and that Sabreliner was a party to the CBA with Local 600 requiring Sabreliner to contribute to the Fund on behalf of its covered employees. SALLC was also aware that Sabreliner was not fulfilling its financial obligations to its creditors, so SALLC had actual or constructive knowledge of the unpaid contributions owed to the Fund by Sabreliner.

29.     As indicated by the allegations of ¶¶ 14-26, *supra*, SALLC has substantially continued the operations of Sabreliner subsequent to the Asset Sale.

30.     As indicated by the allegations of ¶¶ 27-28, *supra*, SALLC had notice and/or constructive notice of Sabreliner's obligations to the Fund, including with respect to the unpaid Sabreliner Contributions.

31.     Consequently, SALLC is a "successor" to Sabreliner under ERISA.

32.     As the successor of Sabreliner, SALLC is liable for all amounts owed by Sabreliner to the Fund, including the Sabreliner Judgment and all post-judgment interest that has accrued thereon.

33.     The remaining balance owed on the Sabreliner judgment, including post-judgment interest through November 16, 2017 is $377,423.37.

WHEREFORE, Plaintiffs request the following relief:

(a)     A judgment against Defendant SALLC and on behalf of Plaintiffs for the remaining balance of the Sabreliner Judgment, including post-judgment interest thereon;

(b)     Attorneys' fees and costs; and

(c)     Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by

JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is

charged, compounded annually.

      (d)     For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Corey J. Jahner*
Corey J. Jahner, Esq.
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018
Telephone: (847) 939-2470
E-mail: cjahner@centralstates.org
November 29, 2017            ARDC No. 6313125